05-3621-cr
United States v. Rosa

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued:  April 27, 2007        Final Submissions:  May 4, 2007

Decided:  October 30, 2007)

Docket No. 05-3621-cr

-------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

EDUARDO ROSA,

Defendant-Appellant.

-------------------------------------

Before:    KEARSE and SACK, Circuit Judges, and MILLS, District Judge.[*]

The defendant appeals from that portion of a judgment of conviction in the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) that sentenced him to the statutory mandatory minimum of 180 months' imprisonment based on the court's finding that he is a violent felon under the Armed Career Criminal Act, 18 U.S.C. § 924(e). We conclude that no evidence before the district court established that a "guilty plea [resulting in a predicate state

_____

[*]    The Honorable Richard Mills, of the United States District Court for the Central District of Illinois, sitting by designation.

conviction] necessarily admitted, and supported a conviction for," Shepard v. United States, 544 U.S. 13, 16 (2005), a crime or "act of juvenile delinquency involving the use or carrying of a firearm . . . that would be punishable by imprisonment for [a] term [exceeding one year]," 18 U.S.C. § 924(e)(2)(B).

Vacated and remanded for resentencing.

JESSE M. FURMAN, Assistant United States Attorney for the Southern District of New York (Michael J. Garcia, United States Attorney, Jonathan S. Kolodner, Assistant United States Attorney, on the brief), New York, New York, for Appellee.

PAUL P. RINALDO, Forest Hills, New York, for Appellant.

SACK, Circuit Judge:

This appeal presents the narrow question of whether, under the circumstances here presented, Eduardo Rosa's 1991 New York state-court guilty plea to a charge of Robbery in the First Degree qualifies as a "violent felony" conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"). The district court decided that it did, and that, therefore, it was bound to impose on Rosa a mandatory minimum sentence of fifteen years' (180 months') imprisonment under the ACCA.

We disagree. Under Shepard v. United States, 544 U.S. 13 (2005), decided shortly before the district court handed down this sentence, the district court was required to determine whether Rosa's "earlier guilty plea necessarily admitted, and

2

supported a conviction for," id. at 16, "an[] act of juvenile delinquency involving the use or carrying of a firearm . . . that would be punishable by imprisonment for [a] term [exceeding one year] if committed by an adult," 18 U.S.C. § 924(e)(2)(B).  In doing so, the court was "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  Shepard, 544 U.S. at 26. No such document, at least none submitted to the district court, established that Rosa's 1991 "guilty plea necessarily admitted, and supported a conviction for," id. at 16, "an[] act of juvenile delinquency involving the use or carrying of a firearm . . . that would be punishable by imprisonment for [a] term [exceeding one year] if committed by an adult," 18 U.S.C. § 924(e)(2)(B).  We therefore vacate the sentence and remand for resentencing.

## BACKGROUND

On January 28, 2004, New York State police officers, acting on a tip from a confidential informant, executed a search warrant for the basement of Eduardo Rosa's home.  There, they discovered two .45 caliber handguns,[1] 142 rounds of ammunition,

---

[1]  The word "gun" has been used frequently during the course of these proceedings.  The statutory word with which we are concerned, however, is "firearm."  See, e.g., 18 U.S.C. § 924(e)(2)(B).  It is important for purposes of addressing this appeal that not all guns are firearms -- BB guns and staple guns, for example, are not.  See, e.g., United States v. Jones, 222 F.3d 349, 352 (7th Cir. 2000) (jury had "a sufficient basis to reasonably conclude that Mr. Jones knew that he possessed a

3

and a bullet-proof vest.  Rosa was arrested on the same day.  He was indicted on February 24, 2004.  He was charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Counts One and Two), and one count of possession of body armor after having been convicted of a felony that is a crime of violence in violation of 18 U.S.C. § 931 (Count Three).

A superseding indictment (the "Superseding Indictment") was returned on January 18, 2005, less than one week before trial was scheduled to begin in the United States District Court for the Southern District of New York (Charles L. Brieant, <u>Judge</u>).  It contained the same three charges as the original indictment but added allegations in Counts One and Two that Rosa had "three [prior] convictions for either violent felony or serious drug offenses, as those terms are defined in [the ACCA, 18 U.S.C. § 924(e)(2)]."  Superseding Indictment, <u>United States v. Rosa</u>, No. S1 04-cr-176 (CLB) (S.D.N.Y. Jan. 19, 2005), at 1-3.

On the morning of January 24, 2005, the day on which the trial was scheduled to begin, Rosa pleaded guilty, without a formal plea agreement, to all three counts of the Superseding Indictment.

According to the Presentence Investigation Report ("Federal PSR"), Rosa previously had been convicted of eight other offenses.  The Probation Office and the government

'firearm' [in violation of § 922(g)(1)] and not a BB gun").

4

classified three of his prior convictions as "violent felonies" within the meaning of the ACCA:

1) On May 23, 1991, Rosa was convicted in New York, after a guilty plea, of Robbery in the First Degree, a Class B felony, in Westchester County Court. He received an adjudication as a Youthful Offender and was sentenced to probation.

2) On October 15, 1993, Rosa was convicted in a North Carolina state court of the felony of assault with a deadly weapon with intent to kill or inflicting serious injury.

3) On October 14, 1997, Rosa was convicted of Assault in the Second Degree, a Class D felony, in Westchester County Court.

Rosa concedes that the second and third convictions qualify as violent felonies for ACCA purposes. He denies, however, that the first conviction, for Robbery in the First Degree, also qualifies as a "violent felony" under the ACCA. If it did, Rosa would be subject to a mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). The narrow question of whether it was properly so classified is the focus of this appeal.

### 1991 Robbery Conviction

On November 19, 1990, at age fifteen, Rosa and one or more of his acquaintances robbed another person of his jacket.

On March 13, 1991, in an indictment in Westchester County Supreme Court, Rosa, along with co-defendant Steven Warren, was charged on four counts. The "First Count" accused

5

Rosa and Warren of Robbery in the First Degree pursuant to New York Penal Law § 160.15(4):

> The defendants, in the County of Westchester and State of New York, on or about November 19, 1990, each aiding and abetting the other and acting in concert, did forcibly steal property from another person, and in the course of the commission of the crime and in immediate flight therefrom, displayed what appeared to be a pistol, revolver and other firearm, to wit, a handgun. This is an Armed Felony offense.

Indictment of Steven Warren and Edwardo [sic] Rosa, Supreme Court, Westchester Cty., Nos. 91-0239-01, -02, filed Mar. 13, 1991, at 1 (the "1991 Indictment").

On March 26, 1991, some two weeks later, the state prosecutor filed a Bill of Particulars.[2] In a list of evidence subject to discovery and inspection, the Bill of Particulars referred to a "small .22 cal. type gun" that was not recovered and therefore would not be submitted as physical evidence at trial as a "[w]eapon[] used in the crime." People v. Rosa, Indictment No. 91-239-02, Consent Order dated Mar. 28, 1991 ("Bill of Particulars"), at 5. The Bill of Particulars set forth the "substance of the defendant's conduct encompass[]ed by the

---

[2] Under New York law, a

"[b]ill of particulars" is a written statement by the prosecutor specifying . . . items of factual information which are not recited in the indictment and which pertain to the offense charged and including the substance of each defendant's conduct encompassed by the charge which the people intend to prove at trial on their direct case . . . .

N.Y. C.P.L. § 200.95(1)(a).

6

charges set forth in the indictment which the People intend to prove upon . . . trial," id. at 1:  "The group did place a gun in the stomach area of the victim while stealing his jacket," id. (unpaginated attachment).

Rosa pleaded guilty to Robbery in the First Degree. The other three charges were apparently thereafter discontinued. During the plea colloquy, Rosa admitted that he aided and abetted other people who forcibly stole property from another while "display[ing] what appeared to be a pistol, revolver or other firearm, to wit, a handgun."  But Rosa denied that he ever carried a handgun.  Although his counsel referred to a "pistol" during the colloquy, throughout the plea allocution the judge consistently adhered to the terminology of the charge -- that someone other than Rosa displayed what appeared to be a handgun.

In accepting the plea, the judge and the defendant engaged in the following colloquy:

> [Judge] Q Mr. Rosa, do you admit to the crime
>                 of robbery in the first degree?
>
> [Rosa] A  Yes.
>
>            . . .
>
> Q     Do you admit at that time and
>       place, while aiding and abetting
>       and acting in concert with [other]
>       individuals, you did forcibly steal
>       property from another person, that
>       person being Mr. Romeo?
>
> A     Yes.
>
> Q.    And do you admit that while aiding
>       and abetting and acting in concert
>       with those other individuals, you

7

did engage in a fight with Mr. Romeo and you did display what appeared to be a pistol, revolver or other firearm, to wit, a handgun?

A    Not me.

Q    Did someone else that you were aiding and abetting and acting in concert with, that is the question?

A    Yes.

Q    So while you yourself may not have possessed what appeared to be a handgun, did you, was one displayed by the people with whom you were acting in concert and aiding and abetting?

A    Yes.

Q    And that was in the course of commission of the robbery and the stealing of the property from Mr. Romeo?

A    Yes.

People v. Rosa, Indictment No. 0239-91, Westchester County Ct.,

Tr. of Plea, Apr. 19, 1991 ("1991 Plea Tr.") at 15-17.

The state presentence report relating to Rosa's 1991 conviction ("State PSR") included several references to a black handgun.  It cited a statement by the victim that "he felt and observed a black handgun pressed into his stomach."  It also noted that a bus driver said he saw one of the perpetrators "holding what appeared to be a black automatic handgun."  But the State PSR also described Rosa as saying that a co-defendant "apparently had in his possession a BB gun."

8

The state trial judge made no direct findings pertaining to the State PSR or the actual use of a firearm. The judge's only mention of a gun -- rather than "what appeared to be" a gun -- was made during the sentencing hearing to acknowledge that one of the circumstances supporting a more lenient sentence was that Rosa "was not the one who wielded the gun." People v. Rosa, Indictment No. 0239-91, Westchester County Ct., Tr. of Sentencing, May 23, 1991, ("1991 Sentencing") at 9. Rosa's attorney, seeking to minimize the sentence, also referred to a gun at that hearing: "[I]t was not Eduardo [Rosa] who had the gun in this particular incident." Id. at 5. As noted, he also referred to a "pistol" during the plea allocution in explaining what Rosa was not pleading to. See 1991 Plea Tr. at 15 ("Your Honor, Mr. Rosa can't admit to displaying a pistol. . . . He can admit to aiding and abetting of displaying a pistol but not that he did it himself.")

District Court Sentencing

The Federal PSR provided no explanation for its characterization of the 1991 robbery conviction as a conviction of a violent felony. In describing this prior conviction, it referenced the State PSR, including the passage where the victim of the robbery stated that he felt a black handgun pressed against him. The Probation Office's sentencing recommendation corresponded to what the government had set forth in a Pimentel letter dated January 23, 2005. See United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991). Rosa made no objections to the

9

Probation Office regarding the Federal PSR. He did, however, submit a letter to the district court on May 11, 2005, objecting to the PSR's assertion that Rosa qualified as an armed career criminal under the ACCA.

At sentencing in the district court, the government acknowledged "that unless [the putative weapon] was in fact a real gun, [the robbery conviction] wouldn't count" as a "violent felony" under the ACCA. United States v. Rosa, No. 04-cr-176 (CLB) (S.D.N.Y. June 21, 2005), Sentencing Tr. ("Sentencing Tr.") at 12; see 18 U.S.C. § 924(e)(2)(B) (defining "violent felony"). But the government maintained that the object used must be inferred to have been a firearm, and, therefore, that Rosa qualified as an Armed Career Criminal under the statute. United States v. Rosa, No. 04-cr-176 (CLB), Letter from Government to the District Court dated June 3, 2005, at 8-9 ("Sentencing Mem.").

In its Sentencing Memorandum, the government asserted that Rosa's 1991 conviction satisfied the statutory requirements for three reasons:

First, the government argued, the defendant admitted that a firearm was used by pleading guilty to Robbery in the First Degree, thereby waiving an affirmative defense that the firearm "was not a loaded weapon from which a shot . . . could be discharged." N.Y. Penal Law § 160.15(4). Because the availability of this affirmative defense is the only relevant distinction here between first and second degree robbery, the

10

government asserted, the defendant's plea to first degree robbery waived the affirmative defense and logically required the conclusion that the offense involved a gun. Sentencing Mem. at 8-9.

Second, the government asserted, the records from the state court proceeding, including the State PSR, the Bill of Particulars, and the sentencing transcript, establish that the perpetrator wielded a firearm. Because Rosa need not be the one who carried the gun as long as the crime "involv[ed]" its use, United States v. King, 325 F.3d 110 (2d Cir. 2003), the offense qualified as a "violent felony." Sentencing Mem. at 7.

Finally, the government argued, by failing to object to the Federal PSR, which included language from the State PSR in which the victim referred to a gun, Rosa waived any objection to this characterization of the state offense. Id. at 11.

The district court accepted the government's arguments, concluding that Rosa was a "career criminal under the [United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines")]." Sentencing Tr. at 25. After applying the Guidelines enhancement for an armed career criminal pursuant to U.S.S.G. § 4B1.4, and a two-level reduction for acceptance of responsibility,[3] the defendant's net offense level was 31. With a criminal history category of VI, his Guidelines sentencing range was 188 to 235

---

[3] The district court also denied an additional one-point reduction for acceptance of responsibility. The defendant does not appeal this determination.

months.[4]  The court then imposed a sentence of the mandatory minimum -- 180 months -- for Counts One and Two, and 36 months' imprisonment for Count Three, all to be served concurrently.

Rosa appeals his sentence.

**DISCUSSION**

I. Issue Presented

The Armed Career Criminal Act, 18 U.S.C. § 924(e), "mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies."  Shepard v. United States, 544 U.S. 13, 15 (2005).[5]  As relevant here, the term "violent felony" includes

---

[4]  Without the sentencing enhancement as a career criminal under U.S.S.G. § 4B1.4(b)(3)(B), defense counsel asserted that the Guidelines range would have been 84 to 105 months based on a net offense level of 22 and criminal history category VI.

[5]  Section 924(e) provides:

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

(2) As used in this subsection--

. . .

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if

"any act of juvenile delinquency [1] involving the use or carrying of a firearm, knife, or destructive device that [2] would be punishable by imprisonment for [a term exceeding one year] if committed by an adult."  18 U.S.C. § 924(e)(2)(B).[6] Rosa does not dispute that his 1991 conviction for First Degree Robbery, a Class B Felony, would have been punishable in New York by a term of imprisonment of more than one year.  See N.Y. Penal Law § 160.15 ("Robbery in the first degree is a class B felony."); id. § 70.00(2)(b) (maximum sentence for a Class B felony is twenty-five years).

New York law defines First Degree Robbery, in pertinent part, as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> . . .

committed by an adult, that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and
>
> (C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

18 U.S.C. § 924(e).

[6]  Rosa does not contest that his first conviction satisfies the requirements of subsection (i) or (ii) of 18 U.S.C. § 924(e)(2)(B).

13

> 4. **Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm**; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

Id. § 160.15(4) (emphasis added); see also People v. Padua, 297 A.D.2d 536, 539, 747 N.Y.S.2d 205, 208 (1st Dep't 2002) (describing the state's burden when charging a defendant under section 160.15(4)). Count One of the 1991 Indictment against Rosa and his codefendant tracked the statute. See 1991 Indictment at 1.

During his plea colloquy in state court, as to Count One, the only count to which he pleaded, Rosa admitted that he had aided and abetted another in "forcibly steal[ing] property from another person" and that "what appeared to be a handgun . . . was . . . displayed by the people with whom [he was] acting in concert and aiding and abetting." 1991 Plea Tr. at 16. These admissions regarding "what appeared to be a handgun" satisfied the elements of the First Degree Robbery crime with which he was charged. See N.Y. Penal Law § 160.15(4). But, standing alone, they do not satisfy the elements of a "violent felony" as defined by the ACCA. To be a violent felony, the

14

crime of conviction must "involv[e] the use or carrying of a firearm." 18 U.S.C. § 924(e)(2)(B) (emphasis added). Because, as the government concedes, the 1991 conviction is a "violent felony" only if the crime involved a firearm, Sentencing Tr. at 12, the district court was confronted with the question of whether the 1991 crime involved a firearm. Adopting the government's arguments, the district court determined that it did.

The sole question for us on appeal is: Did the district court properly determine that Rosa's 1991 state-court conviction "involv[ed] the use or carrying of a firearm," as opposed to the use of a BB gun, or something else other than a firearm, thereby making it a "violent felony" for ACCA purposes? To answer this question we must consider whether the district court looked to appropriate sources in determining the nature of Rosa's 1991 conviction for ACCA purposes. See Shepard, 544 U.S. at 16 (addressing "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary," which is a "violent felony" under the ACCA).

Rosa argues that the district court erred in applying the fifteen-year mandatory minimum under the ACCA because the state court record does not necessarily demonstrate that the 1991 conviction for robbery involved a firearm, and, therefore, the government did not prove the robbery conviction was for a

15

"violent felony" under the ACCA.[7]  The government's arguments are essentially the same as those rehearsed above that it made to, and were adopted by, the district court.

### II. Standard of Review

"[T]he government bears the burden of establishing (by a preponderance of the evidence), the existence of prior violent felony convictions when seeking a sentence enhancement pursuant to U.S.C. § 924(e)."  United States v. Brown, 52 F.3d 415, 425 (2d Cir. 1995).  The questions of what documents a district court may rely on to determine the nature of a prior conviction and of the scope of a district court's authority to make factual findings are questions of law, Shepard, 544 U.S. at 16; id. at 24 (opinion of Souter, J.), which we review de novo.[8]

---

[7]  Rosa also argues that, even if a firearm were used in the offense, Rosa did not carry it and the ACCA does not apply to a crime where a confederate, and not the defendant, carried a gun. We have previously rejected this kind of argument.  See United States v. King, 325 F.3d 110, 113 (2d Cir. 2003) ("The word 'involving' has expansive connotations, and we think it must be construed as extending the focus of § 924(e) beyond the precise offenses of distributing, manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct.").

[8]  The government contends that we should review the district court's decision for clear error, following United States v. Houman, 234 F.3d 825 (2d Cir. 2000) (per curiam).  In Houman, "print-outs of [the defendant's] criminal history . . . list[ed] [his previous] conviction as one for theft," but contemporaneous court records listed the conviction as one for robbery.  Id. at 827.  We applied clear error review and upheld the district court's decision to "credit[] the contemporaneous court records over the later criminal history tabulations."  Id. As we explained, "[t]he court used this information [in the indictment] solely for the purpose of determining whether it was more likely that Houman was convicted of robbery than of theft, not for the purpose of looking beyond the elements of a theft

16

III. Determining the Character of a Prior Guilty Plea

In <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the Court endorsed a "categorical approach" to determining whether a prior conviction qualifies as a "violent felony" under the ACCA. The sentencing court generally must "look only to the fact of conviction and the statutory definition of the prior offense." <u>Id.</u> at 602. Where, as in <u>Taylor</u> (and here), the statutory definition of the state crime of conviction encompasses both crimes that would qualify as a "violent felony" and crimes that would not, however, the <u>Taylor</u> Court concluded that a broader inquiry is permissible. <u>Id.</u> If, as in <u>Taylor</u> (but not here), guilt of the prior offense was determined at trial, that broader inquiry may include the charging document and jury instructions, which define the offense of conviction. <u>Id.</u>[9]

<u>Shepard</u> and <u>Taylor</u> both addressed the question whether a burglary conviction in a state whose law defined "burglary" more broadly than the "generic" definition of burglary -- for

conviction to find that <u>the underlying conduct was violent in nature</u>." <u>Id.</u> (emphasis added). The court here, in contrast, sought to determine the nature of the conduct underlying the previous conviction. The questions presented here, similar to those presented in <u>Shepard</u>, concern the district court's authority to make a factual finding about the nature of the conviction, and are thus questions of law that require <u>de novo</u> review.

[9] The Supreme Court most recently discussed the ACCA in <u>James v. United States</u>, 127 S. Ct. 1586 (2007). There, the Court held that, under Florida law, attempted burglary is considered a "violent felony" under the ACCA because it "'involv[es] conduct that presents a serious potential risk of physical injury to another.'" <u>Id.</u> at 1591 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

17

example, a state that defined burglary as including breaking and entry into a building or a boat, in contrast to "generic" burglary, which is limited to breaking and entry into buildings -- was based on facts that could support a conviction for "generic" burglary, and thus could fit the definition of "violent felony" under the ACCA.[10] Shepard addressed a question left open by Taylor: What may a district court consider to determine whether the offense of conviction following a guilty plea, rather than trial, qualifies as a "violent felony"? Shepard, 544 U.S. at 16.

In Shepard, the district court had not applied the ACCA's fifteen-year mandatory minimum sentence because it had declined to look to "police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." Id. Without this evidence, "the District Court found that the Government had failed to carry its burden to demonstrate that Shepard had pleaded to three generic burglaries." Id. at 18-19. The First Circuit vacated the sentence and remanded for resentencing "[a]fter observing that Shepard had never 'seriously disputed' that he did in fact" commit the acts described in the police

---

[10] A conviction for (generic) burglary is a conviction for a "violent felony" under the ACCA. 18 U.S.C. § 924(e)(B)(ii); see also Taylor, 495 U.S. at 577-78 ("[The ACCA also] provides a sentence enhancement for a defendant who is convicted under 18 U.S.C. § 922(g) (unlawful possession of a firearm) and who has three prior convictions for specified types of offenses, including 'burglary.'").

18

reports and complaint applications.  Id. at 19 (citation omitted).

The Supreme Court reversed.  It concluded that "enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  Id. at 26.

Like jury instructions in a jury case, or "the details of a generically limited charging document . . . in any sort of case," documents stating the facts to which the defendant admitted in entering the plea will generally inform a later court on the crucial question: "whether the plea had 'necessarily' rested on the fact identifying the burglary as generic."  Id. at 21.  The Court rejected the government's argument "for a wider evidentiary cast, . . . going beyond conclusive records made or used in adjudicating guilt and looking to documents submitted to lower courts even prior to charges," id., because such an approach would "ease away from the Taylor conclusion, that respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State," id. at 23.

19

A plurality of the Court was of the view that developments since Taylor -- particularly Jones v. United States, 526 U.S. 227 (1999), and Apprendi v. New Jersey, 530 U.S. 466 (2000) -- further justify "adher[ing] to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary." Shepard, 544 U.S. at 24 (opinion of Souter, J.) (emphasis added). Jones and Apprendi established the rule that "for the sake of preserving the Sixth Amendment right, . . . any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." Id. at 24 (citing Jones and Apprendi). Where "[t]he state statute requires no finding of generic burglary, and without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies . . . (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." Id. at 25. Were the sentencing judge, in considering the ACCA enhancement, to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea," the factfinding would raise the constitutional concern underlying Jones and Apprendi. Id.

In Shepard, the Court concluded that the fact in question -- whether Shepard had broken into the buildings

20

described in the police reports or complaint applications -- even though it was undisputed by the defendant, was "too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi." Id. The plurality therefore would have limited the permissible sources of judicial factfinding to exclude police reports and complaint applications in order, in part, to avoid the risk of unconstitutionality. Id. at 25-26.

Shepard teaches that the sentencing court cannot make its own finding of fact regarding whether a prior conviction qualifies as a "violent felony" (or "serious drug offense") under the ACCA. Id. at 21 (majority opinion) (noting, and later rejecting, the government's argument for allowing a sentencing court to rely on documents beyond "conclusive records made or used in adjudicating guilt"). The sentencing court must rely on evidence from the record of conviction to determine whether the "earlier guilty plea [in question] necessarily admitted, and supported a conviction for," a "violent felony," id. at 16; if such evidence is not available, then the government has not met its burden to demonstrate that the prior conviction was a "violent felony." Speculation based on inferences is misplaced in light of the Supreme Court's concern about establishing with "certainty" that a prior conviction is a predicate crime under the ACCA. See id. at 21-22 (discussing Taylor's "demand for certainty").

The _Shepard_ Court indicated that documents relating to the plea itself -- "a transcript of a plea colloquy or . . . written plea agreement presented to the court, or . . . a record of comparable findings of fact adopted by the defendant upon entering the plea" -- would be "the closest analogs" to the judicial record evidence approved in _Taylor_. _Id._ at 20. These analogs were different from the _pre_-state-plea documents -- police reports and complaint applications -- that the government had urged the _Shepard_ district court to consider.

Here, the government urged the district court to look to one _pre_-state-plea document, the Bill of Particulars, and to other _post_-state-plea documents, documents relating not to the taking of Rosa's plea in State Supreme Court, but to his sentencing there. The district court relied upon (1) the Bill of Particulars filed in the state case (pre-plea), (2) the State PSR (post-plea), (3) the state sentencing transcript (post-plea), and (4) the Federal PSR prepared in this case in determining the factual basis of Rosa's 1991 conviction (post-plea). It also (5) drew logical inferences about facts underlying an affirmative defense that Rosa waived by virtue of his plea. Sentencing Tr. at 25; _see also_ Sentencing Mem. at 8-9.

We pause to note that the _Shepard_ Court was apparently concerned about the prospect of a sentencing court making _any_ factual finding not necessarily implied by the prior conviction -- irrespective of how clearly the factual finding was established. The State PSR here reveals a disputed assertion of

22

fact: whether the "gun" was a "firearm." But Shepard, by concluding that it did not matter whether the defendant in that case disputed that he had broken into the buildings in question and thereby committed a "generic" burglary, Shepard, 544 U.S. at 19, implies that it does not matter here whether the assertion that the 1991 crime of conviction involved a firearm was disputed or not.

For us to affirm the district court's conclusion that the "gun" was a firearm, then, the documents and inferences that the district court used to reach this conclusion must qualify as "Shepard evidence," in this case, documents that show that the "earlier guilty plea necessarily admitted, and supported a conviction for," id. at 16, an offense "involving the use or carrying of a firearm," 18 U.S.C. § 924(e)(2)(B). We conclude that they do not.

A.  The Bill of Particulars

The Bill of Particulars filed by the People in support of the 1991 Indictment included the statement that a "small .22 cal. type gun," which the government intended to prove at trial was used in the crime, was not recovered and therefore would not be submitted as physical evidence at trial, and described the conduct that the People intended to prove at trial as involving "a gun." The district court, in sentencing Rosa, incorporated by reference the government's Sentencing Memorandum which made reference to the Bill of Particulars. But since no mention of it was made in the government's presentation to us, we asked the

23

parties for, and received, supplemental briefing on whether the Bill of Particulars is a "charging document" under Shepard from which the district court might have concluded that what "appeared to be a pistol" was in fact a "firearm" under the ACCA. We conclude that, assuming that the issue has not been waived by the government,[11] the Bill of Particulars does not satisfy the requirements of Shepard.

We assume for purposes of this discussion that the Bill of Particulars may best be characterized as a "charging document." We are not convinced, notwithstanding the Shepard Court's reference to "charging document[s]" as potentially reliable indicia of the nature of prior convictions, that the Bill is therefore "Shepard evidence" for our purposes. See Shepard, 544 U.S. at 26. Rosa did not stand trial. The Bill of Particulars did not help define the crime of which he was convicted, see Taylor, 495 U.S. at 602, or serve to limit the charges that he could have pleaded guilty to, see Shepard, 544 U.S. at 21. At most, the Bill of Particulars limited only what the State would have been allowed to prove against Rosa had the case gone to trial. See, e.g., People v. Greaves, 1 A.D.3d 979, 980, 767 N.Y.S.2d 530, 531-32 (4th Dep't 2003) (reversing rape conviction because of violation of the "defendant's 'fundamental

---

[11] The principle that "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal," Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998), is applicable to criminal cases, see United States v. Crispo, 306 F.3d 71, 86 (2d Cir. 2002).

24

and nonwaivable' right to be tried on only those crimes charged in the indictment . . . as limited by the bill of particulars").

Rosa admitted at his plea allocution to having acted in concert with and aided and abetted people who had displayed "what appeared to be a handgun." 1991 Plea Tr. at 16 (emphasis added). His plea of guilty to Count One was an admission of that with which he was charged -- aiding and abetting and acting in concert with others in "forcibly steal[ing] property from another person" in the course of which one of the perpetrators "display[ed] . . . what appeared to be a handgun." Id. (emphasis added). But nothing he said constituted an admission of the use by anyone in any way of a firearm in connection with the crime.

To be sure, the Bill of Particulars referred to a "small .22 cal. type gun" that was not recovered -- and therefore would not be submitted as physical evidence at trial as a "[w]eapon[] used in the crime" -- but that the People intended to demonstrate had been used by the co-defendants during the course of the robbery. Perhaps the People would have established such use had a trial taken place. But there was no trial. And Rosa, in pleading guilty, pleaded only to participating in a robbery involving "what appeared to be a handgun." During the State Probation Office interview, he expressly stated that a BB gun, which is not a firearm, was used. We therefore cannot conclude that Rosa necessarily pleaded to a crime involving the use of a firearm, regardless of the allegations in the Bill of Particulars.

25

Our conclusion may be in tension with those of two of our sister circuits. In United States v. Simms, 441 F.3d 313 (4th Cir.), cert. denied, --- U.S. ---, 127 S. Ct. 233 (2006), the Fourth Circuit approved a district court's reliance on a victim's statement because it was "later explicitly incorporated into Maryland's statement of charges against Simms." Id. at 317. "Taylor and Shepard specifically allow district courts to consider charging documents in determining the nature of prior convictions." Id. We do not disagree. But we do not think, nor did the Fourth Circuit say or imply, that the characterization of evidence as a "charging document" concludes the inquiry. On the facts before us, even accepting that the Bill of Particulars was a "charging document," as we do for these purposes, we do not think that Rosa pleaded guilty to, or otherwise admitted the allegations contained in the Bill; thus, he did not necessarily plead to a charge involving a firearm. It may well be that Simms, in pleading guilty to the charges against him, did, by contrast, allocute to the factual elements that the witness described and that were later incorporated by the state in its statement of charges.

In United States v. Jones, 453 F.3d 777 (6th Cir.), cert. denied, --- U.S. ---, 127 S. Ct. 611 (2006), the Sixth Circuit concluded that

> An affidavit of complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses, consistent with the standards of Shepard. Complaints are judicial documents, filed

26

under oath and submitted in furtherance of formal prosecution. They bear, accordingly, substantially greater indicia of reliability than mere police reports, which are not filed in court, are not sworn to, and are developed for an investigatory purpose.

Id. at 780 (citation omitted). As we have said, we do not think that every document properly classified as a charging document in a state case to which a defendant pleads guilty is ipso facto probative on the issue of whether the defendant necessarily pleaded guilty to a "violent felony." And we do not think, as the Jones court seemed to indicate, that the question before us is whether the unsworn Bill of Particulars "bear[s] . . . indicia of reliability." The dispositive question is "whether the plea . . . 'necessarily' rested on the fact," Shepard, 544 U.S. at 21, that the crime to which Rosa pleaded "involv[ed] the use or carrying of a firearm." We do not think that it did.

We conclude that the Bill of Particulars, even if a charging document, was not one upon which the district court could rely in concluding that the defendant pleaded guilty in state court in 1991 to a felony involving a firearm. It therefore could not support the district court's application of the ACCA to Rosa.

B. Federal PSR

The Federal PSR cannot satisfy Shepard either. See United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006) ("[A] presentence report in a subsequent case ordinarily may not be used to prove the details of the offense conduct that underlies a prior conviction."); United States v. Garza-Lopez,

27

410 F.3d 268, 274 (5th Cir. 2005) ("[U]nder Shepard, a district court is not permitted to rely on a PSR's characterization of a defendant's prior offense for enhancement purposes."). That the Federal PSR relies entirely on the State PSR for the fact of the involvement of a firearm further undermines the ability of the district court to use it to establish the nature of the crime to which Rosa pleaded guilty. See Shepard, 544 U.S. at 23.

Some circuits have held that a sentencing court may look to a PSR prepared for that case to determine the underlying facts of a previous conviction when the defendant fails to object to the PSR's findings, and thereby assents to those facts. See, e.g., United States v. Siegel, 477 F.3d 87, 93-94 (3d Cir. 2007) (concluding that the defendant's failure to object in the sentencing court and on appeal to the factual description of his prior conviction in the PSR amounts to an adoption of the factual record included therein, and "that the facts averred in the PSR acceded to by Siegel avoid the 'collateral trial,' and 'judicial factfinding' preempted by the Court's holding in Shepard"); United States v. Cullen, 432 F.3d 903, 905 (8th Cir. 2006) ("By not objecting to the PSR's factual allegations, [the defendant] has admitted them." (citation omitted)). We need not decide whether we would adopt such a rule. Although Rosa failed to lodge any objection to the PSR directly with the probation office, he submitted a sentencing memorandum to the district court dated May 11, 2005, specifically objecting to the PSR's findings regarding the 1991 conviction. We therefore cannot

28

conclude that Rosa admitted the findings in the Federal PSR by failing to object to them.

C. The State PSR

As discussed, the State PSR prepared following Rosa's 1991 conviction cited conflicting evidence about the nature of the object used during the robbery. It contained a victim's statement that during the robbery the victim "felt and observed a black handgun pressed into his stomach," and a witness's statement that one of the perpetrators was "holding what appeared to be a black automatic handgun." But it also contained a statement by Rosa that Rosa's co-defendant "apparently had in his possession a BB gun" -- which is not a firearm under the ACCA. The State PSR itself, then, seems to reflect a disputed issue of fact as to the nature of the object used during the robbery.

We have not yet addressed whether, in light of Shepard, a district court may look to facts about the nature of the offense presented in a state presentence report in determining whether a prior conviction constitutes a "violent felony" under the ACCA. The fact that the State PSR quotes the victim or a witness making references to a handgun does not establish, the government agrees, that Rosa "necessarily" pleaded to an offense involving a firearm, as Shepard requires.[12] This is especially so where, as here, the State PSR also describes a statement

_____

[12] See Gov't Br. at 29 ("[U]nder the Supreme Court's decisions in Shepard and Taylor, it is not at all clear that the District Court is permitted to consult the State Presentence Report on its own terms . . . .").

29

disputing the victim's assertions.  See Shepard, 544 U.S. at 21; see also United States v. Grier, 475 F.3d 556, 603 (3d Cir. 2007) (en banc) (Sloviter, J., dissenting) ("I submit that after Shepard, a presentence report without more cannot be the basis for a finding of an offense that is the predicate for a sentence enhancement.").  The government relies on the State PSR, instead, to prove those facts described in the State PSR that were "explicitly adopted by the trial judge to which Rosa assented." Gov't Br. at 29.  As discussed in the next section, however, we disagree with the government's view that the relevant facts in the State PSR were "explicitly adopted by the trial judge" or assented to by Rosa.[13]

The State PSR here does not provide a basis for determining the nature of the defendant's conduct any better than does a police report, which, the Shepard Court ruled, "do[es] not define the conduct to which a defendant eventually pleads guilty."  United States v. Green, 480 F.3d 627, 632 (2d Cir.

---

[13]  If a state presentence report were adopted by the state trial court without objection by the defendant, Shepard's requirement that the defendant "assent" to the factual findings of the trial court for purposes of an inquiry under the ACCA might be met.  But the record indicates neither that the district court explicitly adopted the findings in the State PSR, nor that Rosa assented to such findings.  Because the district court did not explicitly adopt any of these findings, we do not think that Rosa's failure to raise the issue of the PSR's conflicting reports as to the nature of the object used in the robbery constitutes an admission of any kind.  Moreover, because the issue during the plea colloquy concerned who was holding the object, not the nature of the object, it is understandable that no one made a specific finding or objection as to whether the object used was a firearm.

30

2007) (applying Shepard). To begin with, it appears that the State PSR drew its descriptions of statements by the victim and bus-driver witness directly from the police reports rather than an independent investigation. See State PSR at 2 (noting dependence of descriptions on "City of New Rochelle Police Department records"). Like the police reports in Shepard, neither the police reports from which the State PSR drew support nor the accounts of the nature of the object used in the offense were "mentioned at [Rosa's] pleas" or "read by the judge to [Rosa] during the plea colloquy." Shepard, 544 U.S. at 18. Rosa was never "asked if the information contained in the [PSR] w[as] true." Id. (first brackets added); see id. ("Shepard . . . stated 'that none of the details in th[e police] reports w[as] ever mentioned at his pleas,' that 'the reports themselves were never read by the judge to him during the plea colloquy,' and that at no time 'was he ever asked if the information contained in the . . . [police] [r]eports w[as] true.'" (third brackets added; citation to district court opinion omitted)). To the extent that the district court relied on the State PSR itself to support its conclusion that a firearm was used in the 1991 robbery, such reliance was misplaced.

D. The State Trial Sentencing Transcript

The government concedes that the State PSR, without more, is unlikely to satisfy Shepard. It argues, however, that where a state trial court adopts the factual findings of a state presentence report, a defendant's failure to object to those

31

factual findings amounts to an assent by the defendant to those facts. Extending this argument to the state sentencing transcript, the government also does not contend that the transcript, alone, is Shepard evidence. It asserts that in this case, it satisfies the Shepard requirements because Rosa "assented" to that court's statements suggesting that a firearm was used in the robbery.

The Shepard Court ruled that in determining whether a prior plea of guilty admitted a particular fact, a district court is generally "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard, 544 U.S. at 16 (emphasis added). The government here points to the state judge's statement at sentencing that "[Rosa] was not the one who wielded the gun," and contends that this constituted a factual finding by the judge that the wielded object was in fact a gun. It further argues that Rosa assented to this "finding," both because he did not dispute the characterization of the object as a gun and because his lawyer stated that "it was not Eduardo who had the gun in this particular incident." We disagree.

In Shepard, the Court stated that the most appropriate sources for the district court to consult to determine whether a given fact was necessarily established "in pleaded cases" are "the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy or by

32

written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea. With such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact" at issue. Shepard, 544 U.S. at 20-21 (emphases added). The Court's repeated reference to the plea stage reflects both the conclusive effect of a plea as an adjudication of the defendant's guilt and the judicial care that goes into the court's acceptance of a plea. See generally Von Moltke v. Gillies, 332 U.S. 708, 719 (1948) ("A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. . . . Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.'" (quoting Kercheval v. United States, 274 U.S. 220, 223 (1927))).

At the joint plea hearing for Rosa and Warren, with both defendants placed under oath, the court was indeed careful to determine that they understood what they were admitting. No question was raised as to whether the object with which the defendants had threatened the victim was in fact a gun, because a conviction of First Degree Robbery required only that the object appeared to be a gun. Instead, the questioning at the plea hearing focused on who held the object; and the object was unvaryingly referred to by the court as "what appeared to be" a

33

gun. Thus, the court asked, "Mr. Rosa, do you freely and voluntarily admit that . . . you did display what appeared to be a pistol, revolver, or other firearm . . . ?" 1991 Plea Tr. at 14-15 (emphasis added). After Rosa's counsel interposed that Rosa could admit only to aiding and abetting, not to displaying, the court asked Rosa, "And do you admit that while aiding and abetting . . . you did display what appeared to be a pistol, revolver, or other firearm . . . ?" Id. at 15 (emphasis added). When Rosa responded "Not me," the court asked, "So while you yourself may not have possessed what appeared to be a handgun, . . . was one displayed by the people with whom you were acting in concert and aiding and abetting?" Id. (emphasis added). The court had used this same careful term for the displayed object in conducting the allocution of Warren. See id. at 14 ("Mr. Warren, do you freely and voluntarily admit that . . . you did display what appeared to be a pistol, revolver, or other firearm . . . ?" (emphasis added)). The court never asked either Rosa or Warren whether what was displayed was in fact a gun. And after it had concluded its questioning of Rosa and Warren, the court noted that "they have been asked very specific questions." Id. at 17.

In light of the state court's punctilious framing of the "very specific questions" to be answered before he accepted the pleas of guilty, inquiring not whether the object displayed was a gun but only whether it "appeared to be" a gun, it would be unreasonable to infer that his statement at sentencing that he

34

was imposing a lenient sentence on Rosa because Rosa "was not the one who wielded the gun," was intended to constitute a finding that what had been wielded was in fact a gun. Such an offhand, or shorthand, reference is not the manner in which careful judges make findings, and we cannot conclude that this reference falls within the scope of what Shepard meant by "an[] explicit factual finding by the trial judge."

Put another way, we do not think that Rosa's failure to object when the state court said that "[Rosa] was not the one who wielded the gun" qualifies as an admission by silence. We have said that "an admission by silence is admissible [as evidence] if 'there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not.'" United States v. Aponte, 31 F.3d 86, 87 (2d Cir. 1994) (citations omitted). The state court made its statement in the course of giving Rosa a lesser sentence because he was <u>not</u> the one holding "the gun." We hardly think that the statement "charged" Rosa. <u>Cf.</u> <u>id.</u> ("[A] person ordinarily will respond to an incriminatory or defamatory statement with a denial . . . ." (citation omitted)). And we do not think it "more reasonably probable" that someone in Rosa's position would have contradicted the judge at that moment to insist that the object that he was <u>not</u> holding was not a firearm.

For all of these reasons, we conclude that the district court was not able to rely on the state sentencing transcript to find that Rosa's crime or act of delinquency involved a firearm.

35

## E. Logical Inference from the Guilty Plea

Without any sufficiently reliable records from the state proceedings, the linchpin of the government's argument is its interpretation of the logical consequences of Rosa's guilty plea to First Degree Robbery. The government contends that the defendant's guilty plea to Robbery in the First Degree rather than to Robbery in the Second Degree in the 1991 proceedings necessarily means that he admitted that the crime involved a firearm. Gov't Br. at 24-27, 29.

The government's logic is as follows: The elements of subsection (4) of Robbery in the First Degree are identical to the elements of Robbery in the Second Degree under subsection (2)(b). Compare N.Y. Penal Law § 160.15(4) (First Degree) ("A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .") with id. § 160.10(2)(b) (Second Degree) ("A person is guilty of robbery in the second degree when he forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."). Insofar as Rosa's case was concerned, the only difference between the two, which defines their relationship to one another, is that a

36

person accused of Robbery in the First Degree can assert, as an affirmative defense, that "such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." Id. § 160.15(4). If the defendant can establish that affirmative defense, the alleged crime is reduced to Robbery in the Second Degree. The government asserts that here, by pleading guilty to first degree robbery, Rosa waived this affirmative defense. And by doing so Rosa necessarily conceded that the weapon was a firearm.

We find the government's argument unpersuasive. Rosa pleaded guilty, as reflected by the plea colloquy, to a crime that included only the "display [of] what appeared to be . . . a handgun." 1991 Plea Tr. at 16. When charging a defendant with "robbery in the first degree (displayed)" in New York, the state's burden is not "to introduce into evidence the weapon used in the robbery; nor [need it] present evidence that the weapon was loaded or capable of being fired." People v. Padua, 297 A.D.2d 536, 539, 747 N.Y.S.2d 205, 208 (1st Dep't 2002). "Instead, 'Penal Law § 160.15(4) merely requires the prosecution to prove that the defendant or another participant displayed what appeared to a be pistol, revolver or other firearm.'" Id. (citations omitted). By pleading guilty, Rosa admitted that the State had carried this burden. On an affirmative defense, by contrast, the defendant bears the burden of proof. See N.Y. Penal Law § 25.00(2) ("When a defense declared by statute to be

37

an 'affirmative defense' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.").

We are not convinced that by agreeing to plead guilty to Robbery in the First Degree, and therefore not asserting the affirmative defense that the object used during the crime was not a firearm, Rosa was conceding that he would have been unable to carry his burden of proving this affirmative defense had he decided to raise it at trial. First, in order to carry this burden, it seems that Rosa would have been required to go to trial and accept its additional expense and risks. As a practical matter, a principal goal of pleading guilty is to avoid trial, and the desire not to bear the costs of trial should not be a ground for an inference that the party could not prevail at trial. It is doubtful that the State would agree that its own abandonment of three other charges against Rosa in exchange for his agreement to plead guilty to First Degree Robbery could be viewed as an implicit concession that it could not carry its burden of proving these abandoned counts.

Second, Padua, which involved a BB gun in evidence and an alleged second, unintroduced, gun that was "real," suggests that the affirmative defense here comes into play only if the object -- whether "real" gun or BB gun -- was unloaded or inoperable. See Padua, 297 A.D.2d at 539, 747 N.Y.S.2d at 208 ("[T]he affirmative defense to robbery in the first degree comes into play only when it is demonstrated by a preponderance of the

38

evidence that the gun was unloaded or inoperable -- and there was no such evidence offered in this case with respect to either gun."). Therefore, if the object in Rosa's incident was a BB gun, and hence was not a firearm within the meaning of ACCA, Rosa could not have established the affirmative defense under § 160.15(4) if the BB gun was loaded. For this reason too, his decision to forgo any attempt to establish the affirmative defense does not necessarily imply that what was involved was a real gun.

We doubt, moreover, that Shepard and, as the plurality in Shepard suggested, Apprendi, allow such an inference to be drawn. The waiver argument would permit the government to circumvent Shepard's requirement that district courts limit their consideration to particular documents that can identify the underlying facts of a prior conviction with certainty.

We think that the fundamental problem underlying the district court's reliance on inferences from waiver of an affirmative defense, or on the Bill of Particulars, the Federal PSR, the State PSR, the state sentencing transcript, or any other part of the state record, for its conclusion that the "gun" involved was a firearm is precisely the fact that the district court looked to the evidence before it and drew its own inferences rather than determining what inferences were compelled by the state record of conviction. See Sentencing Tr. at 25 ("find[ing] that the record here supports . . . that the defendant is a career criminal under the Guidelines").

39

Permitting a district court to make such factual findings thus threatens to violate the <u>Jones</u>-<u>Apprendi</u> constitutional rule that "any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." <u>Shepard</u>, 544 U.S. at 24 (opinion of Souter, J.). Unlike the police reports that the majority in <u>Shepard</u> refused to permit the district court to consult, which, according to the <u>Shepard</u> dissenters, "ma[de] inescapable the conclusion that, at each guilty plea, Shepard <u>understood</u> himself to be admitting the crime of breaking into a building," <u>id.</u> at 31 (O'Connor, J., dissenting), we think it clear from the plea transcript that neither Rosa nor the court understood Rosa to be admitting that what was displayed was an actual firearm. Thus, the evidence the district court relied on here seems <u>less</u> reliable than that on which the district court relied in <u>Shepard</u>, and which the Supreme Court found unsound. The district court's conclusion that Rosa was subject to the ACCA's fifteen-year mandatory minimum therefore relied on an improper factual finding based on evidence outside the scope of what is permitted by <u>Shepard</u>.

**CONCLUSION**

For the foregoing reasons, we vacate Rosa's sentence and remand for resentencing.