For the foregoing reasons, the judgment of the district court is AFFIRMED.

**UNITED STATES of America,**
**Appellee,**

v.

**Michael GREEN, Defendant–Appellant.**

**Docket No. 05–3830–cr.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 19, 2006.

Decided: March 13, 2007.

Robert M. Spector, Assistant United States Attorney, Hartford, CT (Kevin J. O'Connor, United States Attorney for the District of Connecticut, William J. Nardini, Assistant United States Attorney, Hartford, CT, on the brief), for Appellee.

Thomas P. Belsky, Assistant Federal Defender, New Haven, CT (Thomas G. Dennis, Federal Defender, Hartford, CT, on the brief), for Defendant–Appellant.

Before KEARSE, SOTOMAYOR, and KATZMANN, Circuit Judges.

KEARSE, Circuit Judge.

Defendant Michael Green ("Green") (also known as, *inter alia*, Micheal Wilson) appeals from a judgment of conviction entered in the United States District Court for the District of Connecticut, following his plea of guilty before Mark R. Kravitz, *Judge*, to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentencing him principally to a 37–month term of imprisonment, to be followed by a three-year term of supervised release. The district court's calculation of the term of imprisonment was based in part on the court's finding that one of Green's prior felony convictions was for the attempted possession of a controlled substance with intent to sell. Green challenges that finding on appeal, arguing that the court relied on impermissible evidence. For the reasons that follow, we remand the matter to the district court for further proceedings.

## I. BACKGROUND

On March 8, 2004, Green was arrested following the execution of a search warrant for his apartment. During the search, the law enforcement agents found, *inter alia*, a .357 Smith and Wesson revolver. In July 2004, Green was charged in a one-count indictment (the "Federal Indictment") with violating 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person ... who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm that has traveled in interstate commerce. Green thereafter entered into an agreement with the government in which he agreed to plead guilty and acknowledged, *inter alia*, "[t]hat prior to March 8, 2004, [he] had been convicted of a crime punishable by imprisonment for a term exceeding one year" (Plea Agreement dated January 19, 2005, signed February 2, 2005 ("Plea Agreement"), at 1).

To the extent pertinent to this appeal, the Federal Indictment alleged that one of Green's prior felony convictions was for "Attempted Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16, on October 16, 1996." (Federal Indictment at 1.) In the Plea Agreement, the parties stipulated that Green "had been

convicted of two felony offenses in the state of New York," including "a 1996 conviction for attempted criminal possession of a controlled substance in the third degree." (Plea Agreement at 3.)

### A. The Guidelines–Recommended Calculation of Green's Sentence

A presentence report ("PSR") was prepared, calculating Green's recommended sentence pursuant to the advisory Sentencing Guidelines ("Guidelines"). The PSR calculation started with a base offense level of 20, pursuant to the Guidelines provision that a defendant's base offense level should be "20, if—(A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." Guidelines § 2K2.1(a)(4)(A). Section 2K2.1 adopts the definition of "controlled substance offense" that is used in Guidelines § 4B1.2(b) and Application Note 1 to that section. *See* Guidelines § 2K2.1 Application Note 1. Section 4B1.2(b), to the extent pertinent here, provides the following definition:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the ... possession of a controlled substance ... *with intent to ... distribute*
> . . . .

Guidelines § 4B1.2(b) (emphasis added). And Application Note 1 to this section provides that for purposes of this section, " '*controlled substance offense[s]*' *include* the offenses of aiding and abetting, conspiring, and *attempting to commit such offenses*." *Id.* Application Note 1 (emphases added).

Green objected to the PSR's classification of his 1996 conviction as a controlled substance offense within the meaning of § 2K2.1(a)(4)(A), contending that nothing in the record supported the conclusion that his offense had involved an intent to sell or otherwise distribute. He pointed out that although some subsections of New York Penal Law § 220.16 prohibit possession of controlled substances with intent to sell, other subsections prohibit simple possession without regard to any such intent. He argued that there was no proof that he had been convicted of anything other than simple possession. Absent an intent to distribute, Green argued, his 1996 conviction did not fall within the definition of "controlled substance offense" applicable to § 2K2.1(a)(4)(A), which sets the base offense level at 20, and that that conviction instead fell within § 2K2.1(a)(6), which sets the base offense level at 14.

### B. The State Court Record as to the Nature of Green's Conviction

Section 220.16 of the New York Penal Law, entitled "Criminal possession of a controlled substance in the third degree," has 13 subsections. To the extent invoked in this case, the version of the section that was in effect at the time of the conduct that led to Green's 1996 conviction provided that

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses:
>
> > 1. a narcotic drug with intent to sell it; or
> >
> > . . . .
> >
> > 12. one or more preparations, compounds, mixtures or substances of an aggregate weight of one-half ounce or more containing a narcotic drug.

N.Y. Penal Law §§ 220.16(1) and (12) (McKinney 1987). In order to show that Green was convicted under subsection (1) for possession with intent to distribute, the government introduced several documents.

They included (a) the indictment that led to Green's 1996 conviction in New York Supreme Court for Kings County ("New York Indictment") under § 220.16; (b) a Sentence and Order of Commitment dated October 16, 1996, signed by that court's Clerk ("Commitment Order"); and (c) a computer-generated document from the Clerk's Office of the New York Supreme Court for Kings County ("Kings County Clerk's Office"), entitled "Certificate of Disposition Indictment" (hereafter "Certificate of Disposition").

The New York Indictment charged Green (under his alias "Micheal Wilson") in four counts, only the second of which is relevant here. It alleged as follows:

> The grand jury of the County of Kings by this indictment, accuse the defendant of the crime of criminal possession of a controlled substance in the third degree committed as follows:
>
> The defendant, on or about November 29, 1987, in the County of Kings, knowingly and unlawfully possessed a narcotic drug, namely: cocaine, with intent to sell it.

(New York Indictment, Second Count.) Although no section was cited, this count described a violation of subsection (1) of New York Penal Law § 220.16.

It is undisputed that the New York Indictment was resolved by Green's plea of guilty to attempted criminal possession of a controlled substance in the third degree, an offense under § 220.16 and New York Penal Law § 110.00 (attempt). The government was unable, however, to obtain from the New York court either a formal judgment or a transcript of the plea proceeding. The Commitment Order states that Green was sentenced to six months' imprisonment plus a five-year term of probation and specifies Green's offense of conviction in abbreviated form as "ATT CPCS 3°"—presumably denoting attempted crim-

inal possession of a controlled substance in the third degree. The Commitment Order does not mention § 220.16 *in haec verba*, nor, perforce, any of its subsections. Thus, Green argued that he could have pleaded guilty to, and been convicted of, a violation of subsection (12), which prohibits mere possession, rather than subsection (1) under which he was charged.

The Certificate of Disposition introduced by the government is a document that was generated on March 15, 2004, from the Kings County Clerk's Office database. Signed and officially sealed by "Wilbur A. Levin, County Clerk," it states as follows:

> I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS ON FILE IN THIS OFFICE THAT ON 10/02/1996 THE ABOVE NAMED DEFENDANT WAS CONVICTED OF THE CRIME(S) BELOW BEFORE JUSTICE DEMAREST, C E THEN A JUSTICE OF THIS COURT.
>
> ATTEMPTED CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE 3rd DEGREE
>
> PL 110–220.16 01 CF (DANGEROUS DRUG)
>
> THAT ON 10/16/1996, UPON THE AFORESAID CONVICTION BY PLEA THE HONORABLE DEMAREST, C E THEN A JUDGE OF THIS COURT, SENTENCED THE DEFENDANT TO
>
> ATTEMPTED CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE 3rd DEGREE
>
> PL 110–220.16 01 CF (DANGEROUS DRUG)
>
> IMPRISONMENT = 6 MONTH(S)
>
> PROBATION = 5 YEAR(S)

(Certificate of Disposition). Green and the government stipulated that if a representa-

tive of the Kings County Clerk's Office were called to testify,

> he would testify as to the following information, which is not disputed:
>
>> 1) The notation "PL 110–220.16 01" on the "Certificate of Disposition Indictment," . . . is a reference to subsection 1 of section 220.16 of the New York Penal Law; and
>>
>> 2) The "Certificate of Disposition Indictment" is a document prepared from information contained on a computer system maintained by the Clerk's Office. A clerk present in court the day of a proceeding prepares a calendar documenting the dispositions of all the cases that occur in the particular court that day. The calendar is then given to a data entry technician, who inputs the information into the computer system. The information can subsequently be accessed and printed out at any time upon request.

(Stipulation Concerning Prior Conviction, dated July 1, 2005, signed July 5, 2005 ("Stipulation").)

Although Green and the government stipulated that the notation "PL 110–220.16 01" in the Certificate of Disposition is a reference to subsection (1) of § 220.16, Green contended that that reference was not necessarily accurate but could have been the result of "human error" (Hearing Transcript, July 5, 2005 ("July Tr."), at 8). He argued that "it's possible he pled guilty to a lesser offense or a different section of that offense and then when the clerk filling out the certificate or filling in the computer, they may just reference the charging document and not exactly the judgment of conviction." (Hearing Transcript, May 12, 2005 ("May Tr."), at 15–16.)

In addition, Green argued that he had no burden to show that the Certificate of Disposition was inaccurate because, he contended, the Supreme Court's decision in *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), barred the district court from considering that document. Green argued that with the Certificate of Disposition excluded, the government did not meet its burden of showing that he had pleaded guilty to, and been convicted of, violating § 220.16(1) for attempted possession of a controlled substance with intent to distribute.

### C. The District Court's Ruling

The district court rejected Green's challenge to the admissibility of the Certificate of Disposition and concluded that, in light of that document, along with the New York Indictment, the government had met its burden of showing that Green's 1996 conviction was for violating subsection (1) of § 220.16. (*See* July Tr. at 9.) The court stated:

> I think everything indicates that [Green] pled guilty and was convicted of a sale of [*sic*] possession of a narcotic drug with intent to sell[;] and everything on the other side of it, if there is anything on the other side, is just rank speculation and that's just not enough to cause me to find that the government had failed to establish its burden by a preponderance of the evidence.

(*Id.* at 11.) Thus, the court concluded that Green had been convicted of a controlled substance offense within the meaning of Guidelines § 2K2.1(a)(4)(A). Guided by that section, the court calculated Green's sentence using a base offense level of 20. With adjustments not at issue on this appeal, this resulted in a Guidelines sentencing range of 37–46 months. The court imposed a prison term of 37 months. This appeal followed.

## II. DISCUSSION

On appeal, Green pursues his contention that, in light of *Shepard v. United States,*

the district court was not allowed to consider the Certificate of Disposition in seeking to determine whether his prior conviction qualified as a "controlled substance offense" under § 2K2.1(a)(4)(A) of the Guidelines. He also contends that neither the New York Indictment, on which the district court partially relied, nor the Commitment Order provides any evidence that the offense to which he pleaded guilty involved an intent to sell; hence he argues that the record did not support the application of § 2K2.1(a)(4)(A). Although we reject Green's contention that *Shepard* barred consideration of the Certificate of Disposition, we agree that the New York Indictment did not provide a sufficient basis for the district court's finding, and we conclude that the import of the Certificate of Disposition requires further exploration.

The Second Count of the New York Indictment charged that Green had "possessed" a controlled substance "with intent to sell it." But a mere allegation does not necessarily show the offense to which a defendant eventually pleads guilty; and indeed, no document in the record indicates that Green pleaded guilty to the precise physical conduct alleged in that count, *i.e.,* "possession." Both the Commitment Order and the Certificate of Disposition show that Green pleaded guilty only to "*ATTEMPTED* " possession. (Certificate of Disposition (emphasis added); *see* Commitment Order ("*ATT* CPCS 3°" (emphasis added)).) Further, the Commitment Order provides no indication, either in words or by citation to the pertinent section and subsection of the Penal Law, that Green pleaded guilty to such an attempt with intent to sell. Thus, the only document on which the district court relied and which indicated that Green's 1996 conviction was for attempted possession of a controlled substance with intent to distribute was the Certificate of Disposition, by

virtue of its notation "PL 110–220.16 *01*" (emphasis added).

■ Green contends that the district court erred in considering the Certificate of Disposition at all, arguing that the Supreme Court in *Shepard* held that a federal court may not properly look to such a document in order to determine the nature of the offense of which a defendant has been previously convicted. We disagree. In *Shepard,* which involved a sentencing enhancement under the Armed Career Criminal Act, the Court considered whether, with respect to a defendant's prior plea of guilty to a "nongeneric" offense (*i.e.,* an offense to which the state has given a nontraditional definition), the district court could properly determine the precise nature of the defendant's conviction by "look[ing] to police reports or complaint applications." 544 U.S. at 16, 17, 125 S.Ct. 1254. The Court ruled that such documents do not define the conduct to which a defendant eventually pleads guilty. It concluded that the district court, in inquiring into the nature of the offense of conviction, "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, *or to some comparable judicial record of this information." Id.* at 26, 125 S.Ct. 1254 (emphasis added).

In New York, a Certificate of Disposition is a judicial record of the offense of which a defendant has been convicted. The Criminal Procedure Law states that

[a] certificate issued by a criminal court, or the clerk thereof, certifying that a judgment of conviction against a designated defendant has been entered in such court, *constitutes presumptive evidence of the facts stated in such certificate.*

N.Y. Crim. Proc. Law § 60.60(1) (emphasis added). Such certificates are regularly considered by the New York courts in deciding whether the sentence on a given defendant should be enhanced on the ground that he has previously been convicted of a certain type of crime or a certain number of crimes. *See, e.g., People v. Pane,* 292 A.D.2d. 850, 851, 738 N.Y.S.2d 799, 800 (4th Dep't) (mem.) ("the certificate of disposition was sufficient to support the finding that defendant had previously been convicted of a predicate felony" warranting an enhanced sentence on him under N.Y. Penal Law § 70.06 as a second felony offender), *lv. denied,* 98 N.Y.2d 653, 745 N.Y.S.2d 512, 772 N.E.2d 615 (2002); *People v. Compton,* 277 A.D.2d 913, 914, 716 N.Y.S.2d 263, 263 (4th Dep't 2000) (mem.) ("[t]he certificates of disposition ... constitute presumptive evidence of [prior] convictions" warranting an enhanced sentence on the defendant under N.Y. Penal Law § 70.10 as a "persistent" felony offender), *lv. denied,* 96 N.Y.2d 781, 725 N.Y.S.2d 645, 749 N.E.2d 214 (2001). Accordingly, we regard a New York Certificate of Disposition as the type of judicial record that the *Shepard* Court indicated a federal district court may consider in an effort to determine the nature of the New York offense to which a federal defendant has previously pleaded guilty.

Green's reliance on *United States v. Hernandez,* 218 F.3d 272 (3d Cir.2000) ("*Hernandez*"), for the proposition that a Certificate of Disposition "does not satisfy the 'rigorous standard' set forth in *Shepard*" (Green brief on appeal at 13) is misplaced. In *Hernandez,* the district court had received a New York Certificate of Disposition in evidence and had ruled that no other evidence could be considered. The defendant disputed the accuracy of the Certificate of Disposition by proffering the New York court transcript of his plea colloquy with respect to the offenses in question. The district court refused to consider the plea colloquy transcript and sentenced the defendant on the basis of the Certificate of Disposition. The Third Circuit vacated the sentence, holding that a Certificate of Disposition is not necessarily conclusive:

> [W]hen deciding whether a prior conviction based on a guilty plea in the state court qualifies as a predicate offense for a sentence enhancement under the federal sentencing guidelines, and the accuracy of a Certificate of Disposition for that conviction is seriously called into question, the federal sentencing judge may, and under the circumstances here must, look to the plea colloquy in the state court to resolve the accuracy of the Certificate of Disposition.

*Hernandez,* 218 F.3d at 279. Thus, *Hernandez* held simply that when the accuracy of the Certificate of Disposition is "seriously" questioned, the district court should consider "easily produced court documents, such as a plea colloquy," *id.,* in order to determine whether a given Certificate of Disposition is accurate. *Hernandez* did not, as Green would have it, stand for the proposition that Certificates of Disposition are inadmissible.

■ The conclusion that New York Certificates of Disposition are not inadmissible, however, does not end our inquiry in this case. While a Certificate of Disposition constitutes "*presumptive* evidence of the facts stated in such certificate," N.Y. Crim. Proc. Law § 60.60(1) (emphasis added), the presumption is rebuttable; the certificate is not conclusive. *See, e.g., People v. Jamal Green,* 31 A.D.3d 578, 818 N.Y.S.2d 262 (2d Dep't 2006) ("*Jamal Green I*"). In *Jamal Green I,* the Appellate Division considered a defendant—Jamal Green ("Jamal")—who was sentenced in New York Supreme Court for Queens County as a second violent felony

offender, *see* N.Y. Penal Law § 70.04. Jamal had previously been convicted under subsection (4) of New York Penal Law § 265.02, entitled "Criminal possession of a weapon in the third degree"; subsection (4) was defined in the Penal Law as a violent felony. *See People v. Jamal Green,* 13 Misc.3d 1242(A), 2006 WL 3457236 (Sup.Ct. Queens Co. Nov. 29, 2006) ("*Jamal Green II*"). Jamal, however, contended that he had been convicted under § 265.02 subsection (1), which was not defined as a violent felony. *Id.* at \*2. In support of his contention, Jamal introduced his Certificate of Disposition, which noted a conviction under subsection (1). *Id.* The Appellate Division remanded the matter to the trial court for a determination of "whether the offense of which the appellant was convicted in 1989 was a violent felony offense," "[i]n light of the existence of apparently conflicting documentation." *Jamal Green I,* 31 A.D.3d at 578, 818 N.Y.S.2d at 263.

Following a hearing on the remand from *Jamal Green I,* the trial court concluded that Jamal's prior conviction was under subsection (4), rather than subsection (1) as indicated by his Certificate of Disposition. *See Jamal Green II,* 13 Misc.3d 1242(A), 2006 WL 3457236, at \*4–\*5. At the hearing, the state called as a witness the person responsible for data entry in the Clerk's Office of the Supreme Court for Queens County. The court described her testimony as follows:

> Court Clerk Prinz offered an explanation as to the reason why defendant obtained a Certificate of Disposition specifying subsection one. Ms. Prinz testified that prior to the 1990's, voted indictments such as the one in this case, did not, as a rule, provide a subsection. Therefore, when indictments were filed, data entry clerks were unable to enter subsections into computer files. If a defendant pled guilty or was convicted

by a jury, the subsection was not entered in the computer records and as a result subsections were not indicated in a defendant's NYSID records. Ms. Prinz also testified that certificates of convictions are presently computer generated. *As the current law requires that a subsection be assigned in the records of pertinent crimes, the computers have been programmed to indicate subsection one or "01" as the default subsection without regard to what the proper subsection should be.*

> Thus, *in this case, the witness testified that no subsection was ever entered into the computer at the time defendant pled guilty* to Criminal Possession of a Weapon in the Third Degree on October 18, 1989. When defendant requested a certificate of disposition in June, 2005, the certificate of disposition automatically assigned subsection one, by default, without any person ever checking to determine if this was the correct subsection.

*Jamal Green II,* 13 Misc.3d 1242(A), 2006 WL 3457236, at \*4 (emphases added).

The *Jamal Green II* court reviewed, *inter alia,* the minutes of Jamal's plea of guilty and found it clear that Jamal had pleaded guilty to violating § 265.02 subsection (4). *See id.* The court also found that Jamal could not have been convicted under subsection (1) of § 265.02 because that subsection could not legally have applied to him in light of his then-lack of any prior arrest record. *See id.* at \*5. Accordingly, the court found that the Certificate of Disposition before it did not accurately reflect Jamal's prior conviction.

The proceedings before the district court in the present case did not include any live testimony as to the preparation of the Certificate of Disposition for Green's 1996 conviction. Although the parties stip-

ulated, as described in Part I.B. above, that the "01" notation in Green's Certificate of Disposition was a reference to subsection (1) of § 220.16, they did not stipulate that that reference was accurate. Nor did the Stipulation address the question of what is normally done—by the clerk who attends the sentencing and prepares calendar notations, or the data entry technician who inputs that clerk's notations into the computer, or a clerk who accesses that information from the computer and prepares a Certificate of Disposition—when no subsection has been mentioned in the proceedings.

In such a case, if the default mode at any of those stages—recording, inputting, or accessing—is the insertion of a reference to subsection (1) of the section at issue, as was described by the witness in *Jamal Green II*, then the reference to subsection (1) of § 220.16 in the present case could not properly be taken at face value.

There being no evidence in the present record from which a sound determination could be made as to whether Green was convicted of a narcotics offense that involved an intent to distribute, which was required for the application of Guidelines § 2K2.1(a)(4)(A), we remand the matter to the district court for further proceedings.

We note that the burden of showing that such a sentencing enhancement is applicable to Green is, of course, on the government. *See, e.g., United States v. Spurgeon,* 117 F.3d 641, 643 (2d Cir.1997). We also note that in the prior proceedings in the district court, Green, relying on his interpretation of *Shepard* as forbidding consideration of the Certificate of Disposition, took the position that the government had not presented any admissible evidence that he was convicted of an offense involving an intent to distribute, and hence that Green had no burden whatever to present

any evidence as to the offense to which he actually pleaded guilty (*see, e.g.,* May Tr. at 16 ("in light of *Shepard,* it's our position that that's not our burden")). He argued merely that "it's *possible*" that he had pleaded guilty to an offense that did not involve intent to distribute (*id.* at 15 (emphasis added)); Green did not proffer any evidence to support the view that he had, in fact, so pleaded. If the government on remand produces evidence to show that the reference to subsection (1) in Green's Certificate of Disposition is accurate, rather than a subsection added by default, the district court will be entitled to credit that evidence if Green does not proffer evidence that seriously calls the accuracy of the Certificate of Disposition into question.

## CONCLUSION

For the reasons stated above, we remand to the district court for further proceedings not inconsistent with this opinion. Given the length of time that Green has already been incarcerated, we trust that the district court will expedite those proceedings.

The mandate shall issue forthwith. This appeal may be reinstated, without a new notice of appeal, upon notice by either party to this Court by letter, within 14 days of a decision by the district court, that that court has entered a decision. If reinstated, the appeal shall be referred to this panel.