13-4835-cr
United States of America v. Ortiz

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: November 14, 2014          Decided: February 26, 2015)

Docket No. 13-4835

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

EDWARD N. ORTIZ,

*Defendant-Appellant*.

_____

Before: POOLER, PARKER, and WESLEY, *Circuit Judges*.

Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*) revoking his term of supervised release and sentencing him to five years' imprisonment. On appeal, Ortiz argues that the district court erred in his post-revocation sentencing in determining that the statutory maximum term of

imprisonment the court could impose, upon revocation of his supervised release, was five years. Instead, he urges us to find that our decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), decided after his original sentencing, should retroactively apply to his original offense—changing the classification of the original offense and thereby lowering the statutory maximum term of imprisonment in post-revocation sentencing. We affirm, holding that, in determining the statutory maximum sentence that may be imposed as part of a post-revocation sentence, the post-revocation sentence is determined by reference to the law in effect at the time of the defendant's underlying offense.

Affirmed.

_____

RICHARD S. CRAMER, Hartford, Ct., *for Defendant-Appellant Edward N. Ortiz.*

AMY CHRISTINE BROWN, Assistant United States Attorney (Deirdre M. Daly, United States Attorney for the District of Connecticut; Sandra S. Glover, Robert M. Spector, Assistant United States Attorneys, *on the brief*), *for Appellee the United States of America.*

PER CURIAM:

Edward N. Ortiz appeals from the December 18, 2013 judgment of the United States District Court for the District of Connecticut (Thompson, *J.*) revoking his term of supervised release and sentencing him to five years' imprisonment. On appeal, Ortiz argues that the district court erred in his post-revocation sentencing in determining that the statutory maximum term of imprisonment the court could impose, upon revocation of his supervised release, was five years. Instead, he urges us to find that our decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), decided after his original sentencing, should retroactively apply to his original offense—changing the classification of the original offense and thereby lowering the statutory maximum term of imprisonment in post-revocation sentencing.

We affirm, holding that in determining the statutory maximum sentence that may be imposed as part of a post-revocation sentence, the post-revocation sentence is determined by reference to the law in effect at the time of the defendant's underlying offense.

## BACKGROUND

Ortiz pleaded guilty in 2003 to one count of being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1). He acknowledged being an armed career criminal under 18 U.S.C. § 924(e)(1) based on his three predicate convictions. As an armed career criminal, Ortiz faced a statutory sentence enhancement: a mandatory minimum term of 180 months' imprisonment and a maximum term of life imprisonment. Under the U.S. Sentencing Guidelines, he started with a Guidelines range of 180–210 months, calculated from a total offense level of 30 and a criminal history category of VI. He received a downward departure after the district court granted the government's motion for substantial assistance under U.S.S.G. § 5K1.1. The departure yielded a new Guidelines range of 120–150 months, based on a total offense level of 26 and a criminal history category of VI.

The district court sentenced him principally to 120 months' imprisonment, to be followed by five years' supervised release. It classified his offense under 18 U.S.C. § 3559 as a Class A felony, for which the maximum post-revocation sentence is five years under 18 U.S.C. §§ 3583(b) and 3583(e)(3). The district court explained to Ortiz the conditions of his supervised release and the consequences of violating them:

4

> If you violate any of these conditions during your period of supervised release, the Court will be free to sentence you to additional time in prison of up to five years. . . . So, in effect, you do have a sentence of five years hanging over your head during the period that you're on supervised release.

App'x at 54–55.

Ortiz began his term of supervised release on June 21, 2010. On May 9, 2011, he and a co-conspirator burglarized a home in Connecticut and stole, among other items, twelve firearms, which he then sold to drug dealers. Two district court proceedings followed in connection with that burglary.

First, Ortiz was indicted on new federal firearms charges, to which he pleaded guilty. On October 9, 2013, the district court imposed a sentence of 72 months' imprisonment and three years' supervised release on those charges, after granting the government's motion for substantial assistance under U.S.S.G. § 5K1.1. The district court originally intended to impose 90 months' imprisonment but gave an 18-month[1] credit for Ortiz's pending state sentence on unrelated state charges.

Second, Ortiz was separately charged with violating the conditions of his term of supervised release imposed for his 2003 offense. On December 9, 2013, the

---

[1] Ortiz received 15 months' imprisonment for his state offenses, instead of the expected 18 months.

5

district court held a hearing for revocation of supervised release. One of the four charged violations of Ortiz's supervised release conditions, all of which he admitted through counsel, involved the possession of a firearm. The district court stated:

> In light of the fact that one of the charged violations involves possession of a firearm, I conclude that the nature of that violation at least mandates revocation of the defendant's supervised release pursuant to Section 3583(g).

App'x at 63.

Ortiz contended that the statutory maximum term of imprisonment for the post-revocation sentence was two years. Even though he had been convicted and sentenced as an armed career criminal in 2003, which qualifies as a Class A felony under Sections 2581(b) and 3559, Ortiz argued that for purposes of his 2013 sentence for violating the terms of his supervised release, the 2003 felony should instead be classified as a Class C felony with a maximum post-revocation sentence of two years because in the interim this Court decided *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008). *Savage* concluded that for a prior drug conviction to qualify as a "serious drug offense" and count toward the three requisite prior convictions for sentencing a defendant as an armed career criminal, the

6

government must show (1) that the elements of the prior conviction categorically qualify it as a "serious drug offense"; or (2) that the defendant's guilty plea necessarily rested on facts identifying the conviction as a "serious drug offense." *Id.* at 964.

To be sure, Ortiz was properly sentenced as an armed career felon under pre-*Savage* case law in 2003. However, he argued that had his sentencing occurred post-*Savage* the government would not have been able to prove the three prior serious drug offense convictions required to classify him as an armed career criminal (because the sentencing transcript from one of the convictions is unavailable), that he would have instead been sentenced only as a felon-in-possession under Section 924(a)(2), and that therefore for the purpose of calculating his sentence in 2013 for violating the terms of his supervised release, the 2003 offense should be reclassified as a Class C felony, for which the maximum post-revocation sentence is two years, pursuant to Section 3583(e)(3).

The district court rejected this argument and treated the 2003 offense as a Class A felony, as it was originally classified in 2003. Ortiz's criminal history category of VI for the 2003 offense, and his Grade A supervised release violation involving a "crime of violence" under U.S.S.G. §§ 7B1.1(a)(1) and 4B1.1, yielded a

7

Guidelines range of 51–63 months' imprisonment on his sentence for violating his supervised release. In applying the factors in Sections 3553 and 3583(e), the district court stated that it saw a need to deter Ortiz and to protect the public from further commission of crimes, noting that Ortiz sold the stolen firearms to convicted felons who were actively engaging in criminal activity. The district court also noted that even before the 2003 offense, Ortiz had already served twelve years in prison; that for his 2003 offense, he had received a downward departure, but that given the subsequent violation of supervised release, upward departure may now be appropriate; that Ortiz's recent selling of crack cocaine "was not a casual endeavor," App'x at 86; and that for his 2003 offense, he had made assurances about not reoffending but then committed additional offenses, making it difficult for the district court to now rely on Ortiz's similar assurances as a mitigating factor.

The district court then imposed a five-year term of imprisonment to run consecutive to the term imposed for the 2011 offense—the statutory maximum prison term that can be imposed after revoking supervised release for an underlying offense that is a Class A felony. This appeal is from the post-revocation sentence.

8

**DISCUSSION**

In an appeal from a sentence, we review de novo a district court's legal determinations. *See United States v. Leon*, 663 F.3d 552, 554 (2d Cir. 2011) (citing *United States v. Kinney*, 211 F.3d 13, 19 (2d Cir. 2000)).

"A supervised release revocation proceeding is not the proper forum for a collateral attack on the conviction or sentence that resulted in the term of supervised release." *United States v. Warren*, 335 F.3d 76, 77 (2d Cir. 2003). The validity of the underlying offense "may be challenged only on direct appeal or through a habeas corpus proceeding." *Id.* at 78.

In *Warren*, defendant's supervised release was revoked after he pleaded guilty to violation of the conditions of his supervised release. His underlying conviction in 1989 was a Class B felony, and at the revocation hearing in 2001 the district court imposed the maximum term of imprisonment for revocation of supervised release based on an underlying conviction that is Class B. Defendant relied on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), decided after he pleaded guilty, to argue that his underlying offense would have been a Class C felony and that the post-revocation sentence should account for the change in law.

Affirming the district court's post-revocation sentence, we emphasized in *Warren* that our holding "further[ed] the important interest of promoting the finality of judgments." *Warren*, 335 F.3d at 78. The Supreme Court has emphasized the interest in not undermining the "normal force and effect [of the prior judgment] in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." *Custis v. United States*, 511 U.S. 485, 497 (1994) (quoting *Parke v. Raley*, 506 U.S. 20, 30 (1992)) (holding that in a federal sentencing proceeding, defendant may not collaterally attack a prior state conviction, with the exception of a conviction obtained in violation of the right to counsel).

Additionally, we stated that the *Warren* holding promoted the orderly and efficient administration of justice by limiting defendants to the proper avenues of relief from error in an underlying conviction or sentence. *Warren*, 335 F.3d at 79. Given the seriousness of a violation of supervised release, its prosecution "should not be impeded by the threat of consuming judicial and prosecutorial resources" in order to address unrelated issues. *Id.* Finally, the rule preserved fairness: "it would be unfair to those defendants who do not violate the terms of their supervised release to grant those who do a special opportunity to collaterally attack their underlying convictions in supervised release revocation proceedings." *Id.*

These rationales inform our holding here. Ortiz did not attack his 2003 conviction or sentence on direct appeal or through a habeas petition, and he did not object to his armed career criminal status or the classification of his offense as a Class A felony. Instead, at the revocation hearing, Ortiz relied on *Savage* to argue that his 2003 offense should no longer be considered a Class A felony. This amounts to a collateral attack on the validity of his original sentence, for which he was sentenced as an armed career criminal and for which his original conviction was considered a Class A felony. Even assuming arguendo that, had *Savage* been decided in 2003, it would have affected Ortiz's original sentencing, the proper avenues for Ortiz to collaterally attack his 2003 conviction or sentence had long since passed by the time of his revocation hearing in 2013.

Furthermore, *Savage* cannot be applied retroactively to Ortiz's 2003 offense. Under 18 U.S.C. § 3583(e)(3), a district court may "revoke a term of supervised release" and resentence a defendant "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release." In *Johnson v. United States*, the Supreme Court stated that "[w]e . . . attribute postrevocation penalties to the original conviction." 529 U.S. 694, 698, 701 (2000) (treating post-revocation sentences as "part of the penalty for

11

the initial offense"). We have held that "[a] post-revocation sentence is governed by the law prevailing at the time of the defendant's original offense." *Leon*, 663 F.3d at 554 (citing *Johnson*); *United States v. Turlington*, 696 F.3d 425, 427 (3d Cir. 2012) ("The length of a new term of imprisonment for violating supervised release . . . 'can only be answered by reference to the law under which the defendant was convicted.'" (citing *McNeill v. United States*, 131 S. Ct. 2218, 2222 (2011))); *see also United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) (stating that the consequences of violating supervised release are "authorized by the original conviction").

The Third Circuit, in *United States v. Turlington*, considered an argument structurally identical to the argument that Ortiz makes. *Turlington* involved a defendant whose term of supervised release was revoked. His original sentence in 2004 was a Class A felony, and at his revocation hearing in 2011 he received the maximum term of imprisonment for revocation of supervised release based on an underlying offense that is Class A. On appeal, defendant argued that under the 2010 Fair Sentencing Act, his underlying offense would have been a Class B felony, and that his post-revocation sentence should have accounted for the change in law.

Affirming the district court's post-revocation sentence, the Third Circuit stated that the Supreme Court had "made clear that imposition of a new sentence for violating the terms of one's supervised release is *part and parcel of the first offense* for which the defendant was convicted." *Turlington*, 696 F.3d at 427 (citing *Johnson*, 529 U.S. at 701) (emphasis added). Specifically with respect to the statute governing revocation of supervised release, the Third Circuit stated, "Section 3583(e)(3) is . . . backward-looking; it focuses on the previous, *underlying conviction*." *Id.* at 428 (emphasis added).

We join the Third Circuit in rejecting a retroactive-effect approach. Ortiz argues that if *Savage* had been in effect in 2003, applying *Savage* to the 2003 offense would have affected his status as an armed career criminal, changing the classification of his 2003 offense from a Class A felony to a Class C felony. That change, in turn, would have reduced the statutory maximum sentence that a court could subsequently impose upon revocation of supervised release. Ortiz's armed career criminal status was triggered by three predicate felonies, including a 1992 state conviction for the sale of narcotics. Pre-*Savage*, this conviction categorically qualified as a "serious drug offense" within the meaning of Section 924(e)(2)(A)(iii), so the parties did not seek to obtain the plea transcript.

13

But, in 2013, post-*Savage*, the state drug conviction no longer categorically qualified as a serious drug offense, and the government would have needed to show in some other way that the conviction counted as a predicate felony for the armed career criminal sentencing enhancement. *See Savage*, 542 F.3d at 964. Without the plea transcript, Ortiz contends, the government could not meet its burden of proving the third qualifying predicate felony, thus his original sentence as an armed career criminal cannot inform his sentence for violation of supervised release.

We reject that argument. Section 3583(e)(3) is a backward-looking statute, which focuses on the underlying offense, and the governing law for the post-revocation sentence is the law in effect at the time of the underlying offense. Under this reasoning, the district court correctly determined the maximum statutory term of imprisonment in imposing Ortiz's post-revocation sentence.

**CONCLUSION**

For the reasons given above, we affirm the judgment of the district court.